530 P.2d 989 (1975)
Robert C. STROH and Ann O. Stroh, Plaintiffs-Appellees,
v.
AMERICAN RECREATION AND MOBILE HOME CORPORATION OF COLORADO, d/b/a Lakewood of Denver Trailer Sales, Inc., and Schult Mobile Homes Corporation, a foreign corporation, Defendants-Appellants.
No. 74-067.
Colorado Court of Appeals, Div. II.
January 7, 1975.
*991 Sheldon F. Goldberg, Denver, for plaintiffs-appellees.
Gould, Moch & Bernick, Richard J. Bernick, Denver, for defendants-appellants American Recreation & Mobile Home Corporation of Colorado, d/b/a Lakewood of Denver Trailer Sales, Inc.
Zarlengo, Mott & Zarlengo, Reed L. Winbourn, Denver, for defendant-appellant Schult Mobile Homes Corporation.
Selected for Official Publication.
SMITH, Judge.
Defendants appeal from a judgment awarding rescission to the purchasers of a mobile home. We affirm in part and reverse in part.
On September 5, 1969, plaintiffs purchased from defendant American Recreation and Mobile Home Corporation of Colorado a mobile home which had been manufactured by defendant Schult Mobile Homes Corporation. After signing the purchase agreement, and while inspecting the "Schult Mobile," plaintiffs discovered a number of defects and notified American. They also advised American that they would not acknowledge commencement of the ninety-day warranty period until the defects had been repaired. Plaintiffs paid for the home and took possession of it, upon American's assurance to plaintiffs that the defects would be seasonably cured. They were, in fact, never corrected.
During the next twelve months plaintiffs made numerous trips and phone calls to American in order to have these defects corrected or repaired. However, as found by the trial court, plaintiffs' attempts to get defendants to correct or repair the defects were singularly unsuccessful. In the meantime, the "Schult Mobile" was slowly but surely deteriorating, and periodically plaintiffs gave American additional notice of new defects. Finally on October 12, 1970, plaintiffs gave American notice of all known defects to that date and stated that they were revoking acceptance of the mobile home.
On January 28, 1971, plaintiffs filed a complaint alleging that both American and Schult had breached implied warranties of merchantability and had made false representations in the inducement of the contract. They prayed for rescission of the contract and return of the purchase price. They also asked for exemplary damages of $10,000. American filed a cross-claim alleging that it was merely the seller of the mobile home and that Schult, as manufacturer, was liable for any defects in the manufacture of the mobile home, and demanded judgment against Schult for any amounts for which American should be found liable.
Schult failed to answer within the proper time and a default was entered. Schult's motion to set aside the default was denied. After a trial to the court, on all issues as to American and the issue of damages as to Schult, judgment was entered against both defendants for the purchase price plus interest at the rate of 6% from date of revocation of acceptance. Judgment was also entered in favor of defendant American on its cross-claim against Schult.
The court found, upon the taking of evidence, that Schult had breached its implied warranty that the home was fit for the particular purpose for which it was acquired. See C.R.S.1963, XXX-X-XXX. The court also found that a warranty disclaimer contained in the contract was not effective because it did not comply with the requirements of C.R.S.1963, XXX-X-XXX(2).

I
Schult first asserts that the trial court abused its discretion in not setting *992 aside the default judgment of liability. We disagree. The plaintiffs fully complied with the provisions of 1965 Perm.Supp., C.R.S.1963, 31-9-19(2), which provides for service of process upon certain foreign corporations. Schult admits that proper service was made, but argues, in essence, that the inadvertence and negligence of a secretarial employee was the cause of its lack of knowledge of the service, and urges that such negligence constitutes excusable neglect so that it is entitled to a vacation of the default judgment. The fact that Schult's employee did not make known to Schult the fact that service had been made upon it constitutes neither mistake, inadvertence, suprise, nor excusable neglect. Riss v. Air Rental, Inc., 136 Colo. 216, 315 P.2d 820. Thus, the trial court did not abuse its discretion in refusing to vacate the judgment.

II.
The remainder of defendants' arguments address the validity of plaintiffs' revocation of acceptance of the home. Schult asserts that because plaintiffs did not revoke their acceptance until approximately one year after they purchased the mobile home, plaintiffs have not revoked within a "reasonable time" and have thereby exercised dominion and ownership over the goods. Therefore, it reasons that under C.R.S.1963, XXX-X-XXX, plaintiffs may not rescind the contract. They also assert that the trial court erred in finding that under this statute there was a "substantial impairment" in value of the mobile home. We disagree.
C.R.S.1963, XXX-X-XXX states in pertinent part:
"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured. . .
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. . ."
C.R.S.1963, XXX-X-XXX(2) states:
"Acceptance of goods by the buyer precludes rejection of the goods accepted and, if made with knowledge of a nonconformity, cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured . . ."
What is a "reasonable time" during which a buyer can revoke his acceptance under C.R.S.1963, XXX-X-XXX, is defined in C.R.S.1963, XXX-X-XXX(2), as follows: "[A] reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." This is a question of fact and is to be measured by all the circumstances of the case. Irrigation Motor & Pump Co. v. Belcher, 29 Colo.App. 343, 483 P.2d 980.
In the instant case, the plaintiffs purchased the mobile home with knowledge of the existing defects and reasonably relied upon representations by defendants that the defects would be cured. The trial court also found that plaintiffs had made reasonable efforts to have the defects cured before they revoked acceptance, but had not been successful. Under these circumstances, the delay of one year, from date of purchase to date of revocation of acceptance, was not unreasonable.
Under the provisions of C.R.S.1963, XXX-X-XXX(1), a buyer may revoke his acceptance of goods whose nonconformity substantially impairs their value to him. Official Comment No. 2, appended to that statute, states that the question of impairment turns upon whether the nonconformity is such as will in fact cause a substantial impairment of value to the buyer, regardless of the seller's knowledge of buyer's *993 needs and circumstances. The court's finding that there was a substantial impairment in value to plaintiffs was supported by ample evidence that the mobile home was replete with numerous, serious defects. We therefore accept and are bound by those findings. Linley v. Hanson, 173 Colo. 239, 477 P.2d 453.

III
Defendants assert that the trial court erroneously found that the mobile home was not fit for the purpose for which it was intended, or in the alternative, they argue that the contract did not contain an implied warranty of fitness for a particular purpose under C.R.S.1963, XXX-X-XXX. The question of the existence of a warranty and whether that warranty was breached is ordinarily one for the trier of fact. Janssen v. Hook, 1 Ill.App.3d 318, 272 N.E.2d 385; Putensen v. Clay Adams, Inc., 12 Cal.App.3d 1062, 91 Cal.Rptr. 319; C.R.S.1963, XXX-X-XXX (Official Comment No. 3). Where, as here, there is competent evidence to support the findings of the trial court, such findings will not be disturbed upon appeal. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537.

IV
Having determined that plaintiffs' revocation of acceptance was effective, we must determine whether their acts thereafter entitled them to an award for the entire purchase price. A buyer who asserts a right to revoke acceptance has the same duties and obligations as a buyer who asserts a right to reject the goods before acceptance. C.R.S.1963, XXX-X-XXX(3). After rejection of goods, any exercise of dominion and ownership rights is considered wrongful as against the seller. C.R.S.1963, XXX-X-XXX(2)(a). The purpose of this requirement is to insure that the seller may regain possession of the goods in order to resell the goods or utilize them in order to minimize his loss. Moeller Manufacturing, Inc. v. Mattis, Colo.App., 519 P.2d 1218. Accordingly, notice of revocation of acceptance is necessarily a recognition by the buyer that the property belongs to the seller. Here, after revocation of acceptance on October 15, 1970, plaintiffs retained only a security interest for return of their purchase price. C.R.S.1963, XXX-X-XXX(3). However, they continued to occupy the mobile home as their residence until they purchased a house in March of 1972 and thereupon vacated the mobile home. Even though defendants did not give instructions with respect to the home after they received notice of revocation of acceptance, plaintiffs' remedies under C.R.S.1963, XXX-X-XXX, do not include the right to beneficial use of the home. See C.R.S.1963, XXX-X-XXX. Therefore, we hold that plaintiffs' continued occupancy of the mobile home after the reasonable time at which plaintiffs should have acted under C.R.S.1963, XXX-X-XXX, was wrongful and defendants are entitled to an award of damages.
There is no specific provision in the Uniform Commercial Code for an offset award of damages for wrongful use by the buyer. However, C.R.S.1963, XXX-X-XXX, provides that:
"Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."
We recognize that the general rule is that where a buyer is entitled to rescind the sale and elects to do so, the buyer shall thereafter be deemed to hold the goods as a bailee for the seller. 77 C.J.S. Sales §§ 116 and 118; and see Elwood Edwards, Inc. v. Kinsey, 123 Colo. 52, 225 P.2d 59. Thus, if the buyer uses the goods while he holds them as a bailee, he becomes liable for the value of that use. Staggs v. Herff Motor Co., 216 Tenn. 113, 390 S.W.2d 245. This reasoning is consistent with the Uniform Commercial Code, and, in the instant *994 case, is consistent with the principles of law and equity which the Code provides for as supplementary to its provisions. Moore v. Howard Pontiac-American, Inc., 492 S.W.2d 227 (Tenn.App.).
Since the evidence showed that plaintiffs used the mobile home for a considerable length of time after they should have acted under C.R.S.1963, XXX-X-XXX, it follows that this use reduced the value of the home. Accordingly, defendants are entitled to an offset of a fair and reasonable use value of the mobile home for this period. Gawlick v. American Builders Supply, Inc., 86 N.M. 77, 519 P.2d 313.
Judgment affirmed as to the issues of default judgment and revocation of acceptance. The judgment is reversed on the issue of defendants' damages and the cause is remanded for a determination of defendants' damages, consistent with this opinion, and for application of such damages as an offset.
ENOCH and STERNBERG, JJ., concur.