**CHEYENNE MOUNTAIN BANK,**
**Plaintiff–Appellant,**

v.

**WHETSTONE CORPORATION,**
**Defendant–Appellee.**

**No. 88CA1326.**

Colorado Court of Appeals,
Div. III.

Jan. 11, 1990.

Joseph M. Ricci, P.C., Joseph M. Ricci and Terrence T. McGannon, Colorado Springs, for plaintiff-appellant.

Holme Roberts & Owen, James T. Flynn and Walter H. Sargent, Colorado Springs, for defendant-appellee.

Opinion by Judge MARQUEZ.

Cheyenne Mountain Bank (Bank) appeals from the summary judgment dismissing its claims for breaches of warranties, breach of contract, and misrepresentation against Whetstone Corporation. We reverse and remand for further proceedings.

The Bank received a security interest from Hawaiian Macadamia of Maui, Ltd., in a candy-making machine manufactured and sold by Whetstone to Hawaiian. When Hawaiian defaulted, the Bank repossessed the machine and eventually sold it to Wes Niswonger for substantially less than the amount due on the note. Hawaiian having filed bankruptcy, the Bank was left with only Whetstone to recoup the deficiency.

After selling the machine to Niswonger, the Bank wrote to Whetstone describing the problems with the machine and claiming that there were breaches of warranties. The Bank later brought this action against Whetstone, alleging that the various defects in the machine constituted breaches of warranties, breach of contract, and misrepresentations. The Bank further asserted that it had standing to pursue these claims as a third-party beneficiary of Whetstone's warranties under § 4-2-318, C.R.S.

In response to Whetstone's motion for summary judgment, the Bank submitted an affidavit from Niswonger. In that affidavit, Niswonger described the problems with the machine which he claims to have discussed with Whetstone prior to purchasing the machine from the Bank.

Before the hearing on the motion for summary judgment, the trial court issued a protective order staying the Bank's deposition of Whetstone's president until the mo-

tion for summary judgment was decided. At the summary judgment hearing, the Bank made an offer of proof that Niswonger had acted as its agent in contacting Whetstone about defects in the machine and argued that this satisfied any required notice to Whetstone. The trial court dismissed all claims, and this appeal followed.

## I.

The Bank contends the trial court erred in ruling, as a matter of law, that the Bank failed to give notice of breach as required by § 4-2-607(3)(a), C.R.S. We agree.

In granting summary judgment, the court relied on *White v. Mississippi Order Buyers, Inc.*, 648 P.2d 682 (Colo.App.1982), ruling that the time which had elapsed before the Bank gave Whetstone notice of the warranty claim was unreasonable. We conclude that such a determination on a summary judgment motion was error. However, before addressing the timeliness of the notice, we consider whether the Bank was even required to give notice to Whetstone of the alleged breaches.

Section 4-2-607(3)(a), C.R.S., requires a "buyer" to notify the seller within a reasonable time of any breach of warranty. Failure to so notify the seller precludes a remedy to the "buyer." Section 4-2-607(3)(a), C.R.S.; *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

A "buyer" means a person who buys or contracts to buy goods. Section 4-2-103(1)(a), C.R.S. Certainly, at the time a security agreement is executed, a secured party neither buys nor contracts to buy goods, but rather holds only a lien on that property. However, in every ordinary case, the definition of "buyer" also includes "any legal successor in interest" to the buyer. Section 4-2-103, C.R.S. (Official Comment 1).

■ Generally, a "successor in interest" is one who follows another in ownership or control of property. *Black's Law Dictionary* 1283 (rev. 5th ed. 1979). A secured creditor, after default by the debtor, holds an inchoate possessory interest in the disposition of the property. *See People ex rel. VanMeveren v. District Court*, 619 P.2d 494 (Colo.1980). The Bank followed Hawaiian in control over the equipment after it repossessed the machine and in fact acknowledges that it succeeded to all interests and rights to the equipment and that it was the "assignee of the warranties of the buyer."

■ We reject the bank's contention that a third-party beneficiary, by its inherent definition, cannot also be a "buyer." *See Western Equipment Co., Inc. v. Sheridan Iron Works, Inc.*, 605 P.2d 806 (Wyo.1980) (definition of "buyer" includes "any person who may reasonably be expected to use, consume, or be affected by goods," and a remote "buyer" may sue manufacturer for economic loss caused by breach of warranty).

Accordingly, we hold that a secured creditor, once it repossesses the collateral, becomes a "legal successor in interest" to its debtor, the initial buyer, and therefore also becomes a "buyer" within the meaning of § 4-2-103(1)(a). *But see Johnson v. General Motors Corp.*, 349 Pa.Super. 147, 502 A.2d 1317 (1986) (holding that the heir of a buyer is not a legal successor in interest to the buyer and therefore cannot qualify as a "buyer" under the U.C.C.).

■ In addition, since the Bank is a "buyer," the trial court properly ruled, on the undisputed facts, that the Bank could seek recovery as a third-party beneficiary of Whetstone's warranties. *See Western Equipment Co., Inc., supra.*

Accordingly, § 4-2-607(3)(a), C.R.S., required the Bank to notify Whetstone within a reasonable time of the breach of warranty. However, the trial court here erred in ruling, as a matter of law, that the time that elapsed before the bank gave notice was unreasonable under *White, supra.*

The procedural context of this case is materially different from *White*. There, *after* a bench trial, the court determined as a factual matter that notice was not given within a reasonable time. We affirmed that *factual* finding since the buyer did not notify his seller of the breach before he resold the goods.

By contrast, here, the trial court granted Whetstone's motion for summary judgment when the factual resolution of whether notification was made within a reasonable time was still in dispute.

■ The notice requirement of § 4–2–607(3)(a), C.R.S. serves three purposes: it provides the seller with an opportunity to correct any defect, to prepare for negotiation and litigation, and to protect itself against stale claims asserted after it is too late for the seller to investigate them. *Prutch v. Ford Motor Co.*, 618 P.2d 657 (Colo.1980). And, the buyer's disposition of the subject property before notifying the seller of the breach frustrates these purposes. *White, supra.*

■ Whether the notice given is satisfactory and whether it is given within a reasonable time are generally questions of fact to be measured by all the circumstances of the case. *White, supra; Western Conference Resorts, Inc. v. Pease*, 668 P.2d 973 (Colo.App.1983). *But see Myers v. Koop*, 757 P.2d 162 (Colo.App.1988).

■ Here, Niswonger's affidavit notes that prior to his purchase, he contacted and informed Whetstone of certain problems with the machine. The affidavit further states that on several occasions prior to the Bank's sale of the machine to Niswonger, Whetstone actually attempted to fix the problems. The trier of fact could consider these statements, along with the Bank's post-disposition notice, and conclude that Whetstone, regardless of whether Niswonger was the bank's agent, had actual notice and that such notice was given within a reasonable time.

If the affidavit's assertions are accepted as true, then all of the purposes of the notification requirement would be satisfied. That is, Whetstone had the opportunity to correct the defects before the Bank's resale, and in fact attempted to do just that. Further, Whetstone was given the opportunity to investigate the claimed defects before the Bank's disposition. Finally, Whetstone's knowledge of the problems afforded it the chance to prepare for negotiations with the Bank. When the purposes of the notice requirement have been fully served by actual notice, the notice provision should not operate as a technical procedural barrier to deny claimants the opportunity to litigate the case on the merits. *Prutch, supra.*

■ In the circumstances at issue in which the seller may have indirect notice of a claim before the buyer disposes of the property, we cannot say, as a matter of law, that formally notifying the seller of defects after that disposition is necessarily "unreasonable." The trier of fact will have to make such a determination. *See White, supra.*

## II.

■ The Bank also challenges the dismissal of its misrepresentation claim. We agree that dismissal was improper.

The Bank's amended complaint fails to allege that Whetstone made any representations *with knowledge of, or an utter disregard as to, their falsity.* However, the trial court did not allow the Bank to depose Whetstone prior to the hearing on summary judgment even though notice of deposition was provided at least one month prior to that hearing, and the expense to Whetstone would have been minimal. Conceivably, after such deposition, the misrepresentation claim could have been amended to state a claim upon which relief could be granted.

The judgment is reversed and the cause is remanded for further proceedings.

STERNBERG and CRISWELL, JJ., concur.